**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Sonya Douglas,<br><br>Plaintiff,<br><br>v.<br><br>Sauk Village, Illinois; and Aretha Burns, Arnold Coleman, Sherry Jasinski, Debbie Williams, Gary Bell, and Diane Sapp in their individual capacities,<br><br>Defendants. | NO. 1:23-CV-14559<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Sonya Douglas sues Sauk Village and several members of its Board of Trustees (for convenience's sake, unless otherwise noted, the Defendants will collectively be called the Village) after she was fired in April 2023, alleging violations of the Illinois Whistleblower Act, 740 ILCS 174/15(a), and her due-process rights, 42 U.S.C. § 1983. R. 97, Second Am. Compl. ¶¶ 24–56.[1] The Village moves to dismiss the due-process claim. R. 100, Defs.' Mot. Because Douglas has not plausibly alleged a protected property interest, her due-process claim is dismissed, this time with prejudice. And the Court relinquishes supplemental jurisdiction over the state whistleblower claim.

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has subject matter jurisdiction over the due-process claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the whistleblower claim under 28 U.S.C. § 1367(a).

## I. Background

In evaluating the motion to dismiss, the Court accepts all well-pleaded factual allegations in the Second Amended Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Sauk Village hired Sonya Douglas as a contractor to provide human resources consulting services in June 2020. Second Am. Compl. ¶¶ 1, 13. Douglas signed a written contract that specified her employment was at-will—that is, either party could terminate the contract upon 30-day's notice. *Id.* ¶ 15. The contract's term was indefinite, but the Village enacted an ordinance providing that consultants are employed for one-year terms that the mayor can extend indefinitely. *Id.* ¶¶ 14–15.

In June 2021, the mayor orally offered Douglas a new one-year contract to replace the at-will written contract. Second Am. Compl. ¶ 16. According to Douglas, under the oral offer she could not be terminated "without justifiable reason and a hearing." *Id.* ¶ 17. Douglas accepted the offer. *Id.* ¶ 20. She worked for the next year without incident, and the Board approved payment for all of Douglas's invoices. *Id.* Douglas agreed to an identical oral one-year contract in June 2022. *Id.* ¶ 21. At that time, the Board authorized an increase in Douglas's pay, and it continued to pay her invoices. *Id.* ¶ 23.

In the fall of 2022, Douglas uncovered alleged financial mismanagement by the former treasurer, then-Director of Operations of Sauk Village. Second Am. Compl. ¶¶ 25–27, 29. Douglas immediately began to investigate the issue and reported it to the mayor. *Id.* ¶ 28. But Douglas says the Director of Operations and members of the

Board of Trustees attempted to stifle her investigation. *Id.* ¶¶ 29, 32–33. Eventually, in the spring of 2023, the mayor called an executive session with the Board, where Douglas testified about the financial mismanagement she had uncovered. *Id.* ¶¶ 34–35. The Director of Operations was fired, but one of the Board members "vowed" that Douglas "would be terminated in retribution." *Id.* ¶¶ 37–38.

In April 2023, the Board held a special session and declared Douglas's employment contract was null and void. Second Am. Compl. ¶ 39. The mayor told the Board that it could not unilaterally rescind Douglas's contract. *Id.* ¶ 41. But the Board went forward with Douglas's termination: it authorized the Village to hire her replacement. *Id.* ¶ 40. It refused to pay Douglas for work she performed between April 2023 and April 2025. *Id.* ¶ 42. And it barred Douglas from accessing Village facilities, including her office. *Id.* ¶ 44.

After she was fired, Douglas sued Sauk Village and members of the Board of Trustees. R. 1, Compl. The Village moved to dismiss the complaint for failure to plausibly allege a due-process protected property interest because, according to Douglas's allegations, she was an at-will employee. R. 19, Defs.' First Mot. to Dismiss at 2–4; *see* Compl. ¶¶ 15–19. The Court granted the motion but gave Douglas an opportunity to file an amended complaint. R. 43, 09/30/2024 Order at 1–2.

In the Amended Complaint, Douglas alleged that although her first contract provided for at-will employment, the mayor orally offered her subsequent one-year contracts that entitled her to just-cause employment protections and a pre-termination hearing. R. 50, Am. Compl. ¶¶ 15–16, 18. But Douglas also alleged that the

mayor told her the Board was not required to approve the contract. *Id.* ¶ 17. The Village moved to dismiss, arguing that the oral contracts were invalid because they were not approved by the Board. R. 60, Defs.' Second Mot. to Dismiss at 2–5. The Court dismissed the Amended Complaint because it contained conflicting allegations about whether the Board approved the new employment agreement. R. 96, 09/29/2025 Order at 2. The Court granted Douglas one last chance to revise her complaint to sufficiently allege a protected property interest. *See id.* at 2–3. So Douglas filed a Second Amended Complaint, Second Am. Compl., which the Village again moves to dismiss, Defs.' Mot.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

will … be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for a violation of procedural due process, Douglas must plausibly allege "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). The Village argues that Douglas fails to plausibly allege the first element. Defs.' Mot. at 2–6.

The Due Process Clause does not itself grant property rights to individuals. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, property rights

"are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In other words, "[s]tate law defines the property interest, and federal law defines the process that is due." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 494 (7th Cir. 2010).

Here, Douglas alleges a property interest in her continued contractual employment with the Village. *See* Second Am. Compl. ¶¶ 48–54. When a plaintiff alleges a property interest in something intangible, like continued employment, then the plaintiff must clearly allege "more than an abstract need or desire for it" or "a unilateral expectation of it." *Bd. of Regents*, 408 U.S. at 577. "He must, instead, have a legitimate claim of entitlement to it." *Id.* Thus, a plaintiff must allege a legitimate expectation of continued employment based on a legitimate claim of entitlement. *Covell v. Menkis*, 595 F.3d 673, 676 (7th Cir. 2010).

Specifically, there are two ways Douglas may plausibly allege that a property interest in continued employment was created: (1) "by an independent source such as a state law securing certain benefits;" or (2) by "a clearly implied promise of continued employment." *Munson v. Friske*, 754 F.2d 683, 692 (7th Cir. 1985). An independent source includes statutes, regulations, and municipal ordinances, whereas clearly implied promises include express or implied contracts, such as "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996) (cleaned up). Douglas

does not allege or cite an independent state law that guarantees her role as a contractor to Sauk Village. *See generally* Second Am. Compl.; R. 103, Pl.'s Resp. Br. So for the due-process claim to move forward, she must plausibly allege that a property interest arose from an express or clearly implied promise of continued employment. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

### A. Oral Contracts

Douglas's first, written contract could not establish a property interest because it designated her as an at-will employee. *See Warzon v. Drew*, 60 F.3d 1234, 1240 (7th Cir. 1995). But Douglas contends that her subsequent oral contracts with the mayor created a clearly implied promise of continued employment. Pl.'s Resp. Br. at 4–7. The Village responds that the oral contracts were invalid because they were not approved by the Board, which is required under Illinois law. Defs.' Mot. at 2–4. An implied employment contract receives constitutional protection only if state law recognizes its validity. *Perry,* 408 U.S. at 602 n.7. And in Illinois, "[m]unicipalities are limited to only those powers which are given to them by constitution and statute, and a municipality cannot be bound by a contract that does not comply with the prescribed conditions for the exercise of its power." *Ad-Ex, Inc. v. City of Chicago*, 565 N.E.2d 669, 673 (Ill. App. Ct. 1990). Sauk Village is a non-home-rule municipality, so it may only exercise powers that the state legislature confers upon it by statute. *See Hawthorne v. Village of Olympia Fields*, 790 N.E.2d 832, 840 (Ill. 2003). Thus, if the oral contracts were invalidated by Illinois statute, then they could not create a protected property interest.

In its opening brief, the Village cites four sections of the Illinois Municipal Code to support its argument that state law does not recognize Douglas's oral contracts. *See* Defs.' Mot. at 3–4. But none of those statutory subsections say that the Board of Trustees must approve employment contracts with independent contractors.

First, the Village cites 65 ILCS 5/1-1-2(2). Defs.' Mot. at 3. This section provides definitions for terms used in the Code. *See* 65 ILCS 5/1-1-2. Relevant here, 65 ILCS 5/1-1-2(2)(b) defines "[c]orporate authorities" as "the president and trustees or similar body when the reference is to villages or incorporated towns." *Id*. The Village argues that this section means that when "corporate authorities" appears in other parts of the Code, it must include the Board of Trustees (and not just the mayor). *See* Defs.' Mot. at 3. But because this section merely provides definitions, not rules or limitations on municipalities' powers, it does not itself require that the Board approved Douglas's oral contracts. What's more, section 5/1-1-2(2) does not say that every time the phrase "corporate authorities" is used in the Code it always refers to the village president *and* the board. Thus, this section does not support the Village's claim that Douglas's contracts had to be approved by the Board.

Next, the Village cites 65 ILCS 5/8-1-1, which simply states that the "corporate authorities may control the finances of the" municipality. Defs.' Mot. at 3. But the power to control finances does not provide any insight into the approval processes for contractor employment contracts. And the language of the section is permissive—it says the corporate authorities "may" control finances—so it does not set any limits on municipalities' powers. 65 ILCS 5/8-1-1. So again, this citation does not support the

Village's argument that Douglas's employment contracts were invalid because they were not approved by the Board.

The Village then cites 65 ILCS 5/3.1-40-45. Defs.' Mot. at 3. Although the Village does not identify specific subsections of this statutory provision, the most relevant subsections are (i) and (ii), which set forth the procedure for mayoral approval and veto of all resolutions and motions that (i) create liability for the municipality or (ii) appropriate the municipality's money. 65 ILCS 5/3.1-40-45(i)–(ii). But this section describes only the *mayor*'s role in approving resolutions and motions, not the Board. So this section also does not support the Village's argument that the Board needed to approve Douglas's employment contracts in order to render them valid.

Finally, the Village cites 65 ILCS 5/8-1-7(b). Defs.' Mot. at 3–4. This section is more relevant than the others because it grants municipalities the authority to make contracts for "the employment of outside professional consultants" not exceeding the term of the mayor in office. 65 ILCS 5/8-1-7(b). But this section is also permissive: it says that the corporate authorities "may" hire a consultant, and when they do so, the corporate authorities should appropriate money to pay the consultant on an annual basis. *Id*. So again, the statute does not set limits on municipalities' power to contract with outside consultants. In contrast, subsection (a)—which generally governs municipal contracts—says that if the municipality fails to appropriate money to pay a contract, the contract is "null and void." 65 ILCS 5/8-1-7(a). But subsection (b)—which specifically governs contracts with outside professional consultants—contains no such language. Indeed, subsection (b) is expressly an exception to subsection (a). 65

ILCS 5/8-1-7(b) ("Notwithstanding any provision of this Code to the contrary, ...."); *see also* 65 ILCS 5/8-1-7(a) ("Except as provided otherwise in this Section, ...."). Thus, 65 ILCS 5/8-1-7(b) actually permits municipalities *greater* flexibility to form contracts with consultants without appropriating multiyear salaries up front. Even if the Court were to read subsection (b) to require the Board to fund Douglas's position (which Douglas says the Board did, *see* Second Am. Compl. ¶¶ 17, 23), it does not require the Board to approve her contracts. So, this subsection also does not support the Village's argument. Thus, none of the Illinois statutes cited by the Village in its opening brief support its argument that the Board had to approve Douglas's contracts.

In its reply brief, the Village cites two additional statutory sections. *See* R. 105, Defs.' Reply Br. at 2–4. The Village points to 65 ILCS 5/3.1-30-5. Defs.' Reply Br. at 3–4. But again, this section does not help the Village. It merely grants the mayor the power to appoint—with the advice and consent of the Board—various officers, such as a treasurer, and "other officers necessary to carry into effect the powers conferred upon municipalities." 65 ILCS 5/3.1-30-5(a). But because Douglas was hired as a contractor, not an officer, this section is irrelevant. (As just discussed, 65 ILCS 5/8-1-7(b) is the statutory section that permits municipalities to hire outside contractors like Douglas.)

Still, the Village does ultimately identify the one statutory section that supports its argument: 65 ILCS 5/3.1-40-40. It is true that the Village did not identify this statute until its reply brief, and it did so only in a string citation. *See* Defs.' Reply Br. at 3. But Douglas was on notice that this was the key statute from earlier briefing

and from explicit discussion in an order of the Court. *See, e.g.*, 09/29/2025 Order at 2 (discussing 65 ILCS 5/3.1-40-40). So it is fair game for the Village to rely on this statutory section, which details when the Board must vote to approve certain municipal actions. *See* 65 ILCS 5/3.1-40-40. Specifically, the statute requires that any resolution that creates liability against the municipality, or appropriates municipal funds, must have the concurrence of a majority of the Village's Board members. *Id.* (creation of liability or expenditure of money "*shall* require the concurrence of a majority" (emphasis added)). Because Douglas's contracts required payment of Village funds, this statutory section mandates that the Board had to approve those contracts—the mayor alone could not enter into the employment contracts on the Village's behalf.

And here, Douglas has not plausibly alleged that the Board voted to approve the oral one-year contracts after her first year working for the Village. Indeed, Douglas does not explicitly allege that the Board approved her contracts at all. *See generally* Second Am. Compl. For instance, she does not allege that the Board passed an ordinance approving her contract or held an official meeting to do so. *See generally id.*; *see also* 09/29/2025 Order at 2 (describing how Board approval of Douglas's contract would likely "be clear from public records"). Instead, she alleges only that the Board authorized her salary increase and approved her invoices from June 2022 until her termination in April 2023. *See* Second Am. Compl. ¶ 23. And she says that it was common practice for the mayor to offer oral contracts to contractors and for the Board to fund those positions. *See id.* ¶ 42; Pl.'s Resp. Br. at 5. Douglas argues that these allegations are enough to raise a plausible inference that the Board approved her

contract. Pl.'s Resp. Br. at 4–6. But even assuming these facts are true, they do not raise a reasonable inference that the Board *formally approved* her employment contract, as is required by the Illinois statute. These facts merely suggest that the Board paid Douglas when she billed the Village for her work, which is not the same.

In sum, Douglas's contracts violated Illinois state law because the Board did not approve the new contract terms with the concurrence of its members. And because Douglas's contracts violate state law, she cannot rely on them to claim a legitimate expectation of continued employment. Without that law-based expectation, she has not pleaded a protected property interest under the Due Process Clause. *Shlay v. Montgomery*, 802 F.2d 918, 923 (7th Cir. 1986) (holding that an oral employment contract was unenforceable, and thus did not establish a property interest, because the municipal employee who made the promise acted outside of their authority to do so).

**B. Village Practice**

Douglas alternatively argues that, even if the oral contracts were invalid, the Village's practice of offering oral employment agreements and funding the positions created a legitimate expectation of continued employment. Pl.'s Resp. Br. at 5–6. It is true that due-process protected property rights need not always be codified in writing; they may also arise from common practices by the employer. *See Tire Town Auto LLC v. Wood County*, 175 F.4th 888, 891 (7th Cir. 2026). But a protected property interest based on common practice must be established through rules or mutually explicit understandings, not solely through past actions by the employer. *See Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir. 1984).

Here, Douglas alleges that "it was the Village's practice to offer written contracts for 1-year that were open-ended, followed by oral 1-year contracts." Second Am. Compl. ¶ 42. And she says that her "predecessor was employed under a similar oral contract, and she was given a hearing prior to the termination of her employment." *Id.* ¶ 18. Thus, Douglas contends that the Village's common practices establish that she was entitled to continued employment.

Douglas relies on *Vail v. Board of Education of Paris Union School Distrist No. 95*, 706 F.2d 1435, 1436 (7th Cir. 1983), to support her argument. Pl.'s Resp. Br. at 7. In *Vail*, the Board of Education itself recruited and hired the plaintiff. 706 F.2d at 1436. The Board knew the plaintiff had concerns about job security and represented that he would be hired for a two-year position, even though it could only guarantee one year of employment upfront. *Id.* In other words, even though the written employment agreement offered a one-year term of employment, the Board promised to renew the plaintiff's contract for a second year. *See id.* Because of the Board's representations, the Seventh Circuit held that the plaintiff reasonably relied on an implied contract for continued employment, and thus had a protected property interest. *Id.* at 1438. But Douglas's case is distinguishable from *Vail*. Douglas does not allege the Village Board directly recruited her or induced her to take on the contractor role with a promise of job security. *See generally* Second Am. Compl. So Douglas does not plausibly allege that she legitimately and reasonably relied on a promise from the government like the plaintiff in *Vail*.

Douglas also cites case law discussing property interests that are created by a *de facto* tenure program. *See* Pl.'s Resp. Br. at 6–7. A *de facto* tenure program that confers a protected property interest is typically found in the context of non-tenured professors seeking tenure. *See, e.g.*, *Perry*, 408 U.S. at 601. But this theory has also been brought by plaintiffs with claims in other employment contexts. *See Shlay*, 802 F.2d at 922. A plaintiff can plausibly allege a *de facto* tenure program exists when a formal tenure system has not been adopted, but the employer adheres to an implied understanding of continued employment that may create a legitimate claim of entitlement to it. *Perry*, 408 U.S. at 602.

But the Seventh Circuit rejected a theory of *de facto* tenure under similar circumstances in *Shlay v. Montgomery*. 802 F.2d at 923. There, the plaintiff's oral employment contract with the municipality was deemed unenforceable because it violated state law. *See id.* at 922. The employee argued that even if the contract was unenforceable, "his property interest was created as a result of *de facto* tenure which he enjoyed" because of the contract, his long tenure in his position, and his history of receiving raises during his employment. *Id.* at 922–24. The Seventh Circuit concluded that the plaintiff's oral contract could not establish an implied understanding of continued employment because it was invalid. *Id.* at 922–23. The court also reasoned that "longevity alone does not create a property interest," and "the mere fact that the City increased compensation and benefits for its employees over the years does not give rise to a mutual understanding with respect to continued employment." *Id.* at 923 (cleaned up).

So, too, here. Douglas's unenforceable oral contracts cannot establish an implied understanding of continued employment. *See Shlay*, 802 F.2d at 923. And although Douglas says that she received salary increases during her employment with the Village, Second Am. Compl. ¶ 23, this fact does not plausibly suggest a mutual understanding of continued employment, *Shlay*, 802 F.2d at 923. Douglas also alleges that her predecessor "was employed under a similar oral contract, and she was given a hearing prior to the termination of her employment." Second Am. Compl. ¶ 18. But past actions by the employer cannot alone establish a property interest. *Hermes*, 742 F.2d at 355. Because Douglas does not allege facts that suggest she had *de facto* tenure, Douglas cannot plausibly allege a property interest under that theory, either.

Without a property interest, Douglas fails to state a due-process claim. Because this was Douglas's third attempt to plausibly allege a due-process violation, and she still has not done so, the claim is now dismissed with prejudice.

**IV. Conclusion**

The Village's motion to dismiss the due-process claim, R. 100, is granted, and the due-process claim is dismissed with prejudice. Because there are no remaining federal claims, the Court relinquishes supplemental jurisdiction over the state law whistleblower claim. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (explaining that "[w]hen federal claims drop out of the case," the trial court has "broad discretion to decide whether to ... relinquish

supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment").

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2026